# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Brian Kelly,<br><br>　　　　Plaintiff,<br>v.<br><br>United Payment Center, Inc.,<br><br>　　　　Defendant. | Case No.: 0:22-cv-1799-ECT-DLM<br><br>**DECLARATION OF<br>PETER F. BARRY IN SUPPORT OF<br>PLAINTIFF BRIAN KELLY'S<br>MOTION FOR ATTORNEYS' FEES<br>AND COSTS** |

I, Peter F. Barry, Esq. declare as follows:

1. That I am the owner of The Barry Law Office, Ltd. I am submitting this Declaration in support of my firm's application for an award of attorney's fees and costs in connection with services rendered in the above-entitled action (the "Action").

2. That attached as **Exhibit 1** is my curriculum vitae.

3. That I have been admitted to the practice of law in Minnesota since October 25, 1996, and the United States District Court for the District of Minnesota since 1997, and I am in good standing in all courts where I am admitted or have ever appeared.

4. That I am admitted to practice within the State and Federal courts of Minnesota, the United States 8th Circuit Court of Appeals, and the United States Supreme Court, amongst numerous other federal courts throughout the United States.

5. That I am an experienced federal litigator and have extensive experience in FDCPA litigation.

6. That I have analyzed, litigated, handled, and settled thousands of FDCPA claims in Minnesota and nationwide on behalf of individual and class consumers.

- 1 -

7. That Plaintiff Brian Kelly ("Plaintiff") hired counsel on a written contingency fee agreement that provided for the maximum statutory damages under the FDCPA, DPPA, and FCRA to be paid to the Plaintiff, and that all attorney's fees and costs are to be paid to my law firm.

**MEET AND CONFER ATTEMPT WITH DANIEL BREES**

8. That on May 25th, 2023, at approximately 11:15 AM, I met and conferred with Defendant's counsel, Daniel Brees, Esq., in a good faith effort to resolve this matter without the necessity of the Court's intervention.

9. That Mr. Brees and I were unable to reach an agreement which obviated the necessity of filing the present motion for attorneys' fees and costs.

**BILLABLE TIME ON FILE**

10. That my firm represented Plaintiff in this action. My firm actively participated in all aspects of this litigation beginning in June 2022 up through the current time. This case involved significant legal research, drafting of pleadings, client meetings, settlement negotiations, and appearance of counsel. The tasks undertaken by my firm can be summarized as follows:

    a) drafting, editing, revising, and filing the Complaint;

    b) conferring with the Plaintiff evaluating his case and selecting the viable claims;

    c) editing and revising all filed pleadings;

    d) researching all legal issues in the case, from the preparation of the Complaint to discovery and motions;

    e) researching all factual and legal issues;

f) conferring with client on all tactical and strategic decisions;

g) researching, drafting, editing, and revising Plaintiff's motion for summary judgment;

h) reviewing correspondence, pleadings and briefing from defense counsel;

i) ensuring the elimination of duplicative or redundant work on this case; and,

j) drafting of declarations of counsel and the fee petition for this law firm, along with all of its attachments.

11. That the Billing Detail by Person attached hereto as **Exhibit 2** is a true and correct copy of a detailed and specific summary indicating the amount of time, by specific work expended, spent by me in this litigation, and the lodestar fee calculation based on my firm's current billing rates. The time report was prepared from contemporaneous time records regularly prepared and maintained by my firm.

12. That I carefully reviewed and confirmed each time entry to ensure that only actual, appropriate and reasonable amounts of time were billed for each particular task performed in this case.

13. That where necessary in my judgment, I exercised appropriate billing discretion by reducing the amount of time charged for certain tasks or where I believed there might be redundancy or overlap. I also billed certain activities as "no charge" or at a reduced amount of time where appropriate and that these reductions in time are already reflected in **Exhibit 2.**

14. That the lodestar devoted to the case by The Barry Law Office, Ltd for work performed with respect to this case is as follows:

| Attorney | Hourly Rate | Hours | Fees |
|---|---|---|---|
| Peter F. Barry | $600.00 | 163.5 | $ 98,100.00 |
| **TOTAL FEES:** | | | **$98,100.00** |

15. My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items, law clerks, or administrative staff. Expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

## CURRENT BILLABLE HOURLY RATE

16. That my current my hourly rate is $600.00 an hour. This rate is reasonable, and it is the rate I currently charge my consumer law clients, including hourly clients. This rate is in line with attorneys with comparable experience levels for consumer litigation of a similar nature (25 years). This hourly rate is explicitly included in my written fee agreement with my client and is agreed to in writing.

17. That my hourly rate has correspondingly increased over the past years:

    - That my lodestar attorney fee rate was approved in 1999 for $225.00 per hour in a consumer law case in Minnesota State Court. *Jordan et al. v. Western Diversified Life Insurance Company* (Hennepin County, Minnesota, Court File No. CT-96-016337).

    - That my lodestar attorney fee rate was approved in 2001 for $225.00 per hour in a consumer law case in the United States Federal District Court, for the District of Minnesota. *Wuollet v. Wexler & Wexler* (United States District Court for the District of Minnesota, Court File No.: CV 01-506 DSD/SRN).

- That my lodestar attorney fee rate was also approved in 2002 by this Court at $250.00 per hour. *Andernacht v. Interstate Credit Control*, (United States District Court for the District of Minnesota, Court File No.: CV 02-928 DSD/SRN).

- That my lodestar attorney fee rate was approved in 2002 for $250.00 per hour in a consumer law case in the United States Federal District Court, for the District of Minnesota. *Armstrong v. Rose Law Firm, P.A.* (United States District Court for the District of Minnesota, Court File No.: Court File 00-2287 (MJD/SRN). 2002 WL 31050583.

- That my lodestar attorney fee rate was approved in 2004 for $300.00 per hour in a FDCPA consumer law case in the United States Federal District Court, for the Northern District of Texas. *Remely v. Etan General, Inc.* (USDC-ND of Texas, Court File No. 3-01CV2658-K).

- That my lodestar attorney fee rate was approved in 2005 for $300.00 per hour in a FDCPA consumer law case in the United States Federal District Court, for the Eastern District of Pennsylvania. *Frankenfield v. National Action Financial Services, Inc.* (USDC-ED of Pennsylvania Court File No. 04-00238).

- That my lodestar attorney fee rate was approved in 2009 for $350.00 per hour in a FDCPA consumer law case in the United States Federal District Court, for the District of Minnesota. *Gorton v. Debt Equities, LLC*, Civ. No. 08-4817, Doc. No. 26 (D. Minn. July 13, 2009).

- That my lodestar attorney fee rate was approved in 2012 for $425.00 per hour in a FDCPA consumer law case in the United States Federal District Court, for the District of Minnesota. *Gupta v. Arrow Financial Services, LLC, Gurstel, Staloch & Chargo, P.A.,* Civ. No. 0:09-cv-03313-SRN-SER, Doc. No. 57 (D. Minn. March 29, 2012).

- That I litigated a state court consumer claim in 2019-2020 for which I was paid starting at $525.00 per hour and increasing to $550.00 per hour before the case was settled confidentially. *Confidential Client v. Confidential Law Firm, State of Minnesota, Confidential District Court (2019-2020).*

18. That my current hourly rate of $600.00 is justified by my extensive experience, national reputation, the nature and complexity of FDCPA cases generally, the relative risk involved in consumer cases, and hourly attorney's fee rates from comparable markets.

## **BILLABLE COSTS ON FILE**

19. That attached hereto as **Exhibit 3** is a true and correct copy of my law firm's costs records in this matter.

20. The Declaration of Josh B. Swigart filed concurrently herewith provides for an additional $100.00 cost in connection with his pro hac vice admission to this district.

21. From the inception of this litigation through today, the attorneys and law firms of record of this Action have incurred a total of **$7,207.66** in unreimbursed expenses in connection with the prosecution of this litigation. These costs are broken down as follows:

| Cost Category | Amount |
|---|---|
| Necessary Deposition Fees | $5,414.00 |
| Process service and Courier Fees | $412.00 |
| Filing Fees of the Clerk | $602.00 |
| Travel Expenses | $100.00 |
| Research and Investigation Fees | $679.66 |
| **Total** | $7,207.66 |

22. That the expenses incurred pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. The statement of the hours worked pertaining to this case is based on and reflected in records generated contemporaneously with the work performed.

### **NECESSITY OF DEPOSITION OF MICHAEL MARTINEZ**

23. That the cost category of "Necessary Deposition Fees" above pertains only to the deposition taken on March 30th, 2023, of Michael Martinez ("Mr. Martinez"), the Chief Financial Officer and Corporate Director of Defendant.

24. That the information and facts obtained pursuant to the deposition of Mr. Martinez were critical and decisive in causing the terminating event of this Action.

25. That the information and facts obtained from the deposition of Mr. Martinez provided grounds for filing Plaintiff's Motion for Summary Judgment on April 25, 2023. (Dkt. # 39).

26. That the deposition of Mr. Martinez was attached to Plaintiff's Motion for Summary Judgment and cited to 29 separate times in the Memorandum of Law filed in support thereof. (Dkt. # 41).

27. That the deposition of Mr. Martinez and the filing of the Motion for Summary Judgment prompted Defendant to provide Plaintiff with a Rule 68 Offer of Judgment on May 2nd, 2023.

28. That Plaintiff filed the Notice of Acceptance to Defendant's Rule 68 Offer of Judgment on May 15th, 2023.

29. That the videography of Mr. Martinez's deposition was reasonably necessary as many of the exhibits entered during the deposition were audio and video exhibits, and that the exhibits presented, and responses thereof could only be accurately reflected by videography.

30. That the deposition of Mr. Martinez, including the deposition transcript and videography of the deposition, were necessarily obtained and submitted in direct connection with the terminating event of this Action.

**NATIONAL REPUTATION IN FDCPA LITIGATION JUSTIFIES RATE**

31. That my current hourly rate of $600.00 is justified by my experience, the nature and complexity of FDCPA cases generally, the relative risk involved in consumer cases, and hourly attorney fee rates from comparable markets.

32. That I am recognized as a national expert in FDCPA litigation having been featured on collection abuse news stories for every major television network as well as the New York Times, Wall Street Journal, and the Washington Post, amongst others.

33. That on May 30, 2009, I appeared as a featured speaker before a standing-room-only crowd of nearly 2,000 bankruptcy practitioners at the Chicago Marriott to discuss the role the FDCPA plays in reducing federal bankruptcy proceedings.

34. That I am an Adjunct Professor of Consumer Law at William Mitchell College of Law, Saint Paul, Minnesota, where I have taught since 2003.

35. That I am an experienced consumer rights lawyer with extensive experience in FDCPA litigation.

36. That since 2001, I have trained thousands of attorneys, from all 50 states and Puerto Rico, throughout the country in an intensive multi-day FDCPA litigation seminar. See [fdcpabootcamp.com](fdcpabootcamp.com).

37. That I trained several hundred new consumer lawyers at conferences in Seattle and San Francisco over three days in January 2011 and March 2011 in effective FDCPA practices.

38. That I volunteered as a 4th District Investigator in Hennepin County for 12 years of service from 2006 until 2019.

39. That I have annually addressed the Minnesota State Bar's Creditor Debtor Section on FDCPA and collection abuse issues and recently was a featured CLE speaker with Minnesota CLE in December 2020.

40. That in November 2020, I was a featured guest on a collection industry seminar broadcast nationwide, appearing as a Plaintiff's expert on FDCPA matters.

41. That in November 2010, I also developed, organized and taught an extensive two-day litigation seminar in a mock courtroom setup in San Juan, Puerto Rico for the National Association of Consumer Bankruptcy Attorneys. The litigation presentation included using numerous live witnesses, oral arguments, discovery

motions, trial practice, video depositions, and a presiding judge before an audience of several hundred bankruptcy practitioners.

42. That I participate in the Federal Bar Association and volunteer for the Federal Pro Se Project and my volunteer service was acknowledged in its 2019 Decennial Report.

43. That in January 2009, I appeared as a featured speaker at the American Bar Association's Committee on Consumer Financial Services Meeting in Scottsdale, Arizona, speaking on FDCPA compliance issues. The group consisted of approximately 500 in-house and general counsels for industry participants.

44. That in March 2010, I was a featured speaker before several hundred collection agency executives and general counsels throughout the United States, in a 2-hour teleconference with the American Collectors Association ("ACA") to discuss the CARD Act Amendments. I was the first Plaintiff's attorney to ever be asked to participate in such a conference in the ACA's history. The ACA represents more than 125,000 debt collectors in the United States. To avoid potential conflicts and maintain independence from the collection industry, I directed the ACA to donate its speaking honorarium to the Union Gospel Mission.

45. That I speak nationally on FDCPA issues and regularly volunteer as a featured speaker to the North American Collection Agency Regulators Association Meetings.

46. That I appeared as a featured speaker at the Cleveland Bar Association's William O'Neil Bankruptcy Institute in May 2011.

47. That I have appeared at countless other CLE and speaker engagements over the past 25 years discussing my expertise in FDCPA litigation.

## **EXPERIENCE JUSTIFIES RATE**

48. That my professional billing rate has increased over the years in step with my knowledge, experience, and national reputation.

49. That from 1994-1996, I worked as an unpaid, volunteer, certified student attorney for two years in numerous legal settings including the Ramsey County Public Defender's Office, the St. Paul Tenants Unions, the Criminal Appeals Clinic, Legal Assistance to Minnesota Prisoners (LAMP), the Misdemeanors Clinic, and others.

50. That in further support of this rate, I state and aver that I have and continue to charge $600 per hour to consumer clients on hourly consumer cases where no fee-shifting statutes exist.

51. That the very best evidence of a reasonable hourly rate is one that a willing client can and will pay for legal work.

52. That the evidence shows that my professional rate currently stands at $600 per hour.

## **LOCAL FDCPA FEES AWARDS JUSTIFY RATE**

53. That in early 2007, my then law partner, Mr. Nicholas P. Slade, Esq., was approved by this Court at a rate of $350 per hour on a federal consumer law case. *Stella v. Anderson, Kohman, et al., USDC-Minnesota 06-CV-03564 JRT-FLN, March 16, 2007, Docket 29 & 32.* Mr. Slade had only been practicing consumer law since 2000—four years less than this counsel.

54. That in March 2011, Attorney Sam Glover was approved by the Minnesota District Court at the rate of $350 per hour in an FDCPA case. I trained Mr. Glover in FDCPA litigation in May 2006 in my FDCPA Boot Camp. I have been practicing six years longer than Mr. Glover. *Phenow v. Johnson, Rodenberg & Lauinger, PLLP, et al.,* USDC-Minnesota 10-cv-02113-DWF-JJK, March 1, 2011, Docket 36.

55. That as discussed supra, this District Court Approved my hourly rate at $425 per hour for work I performed between July 2009 and April 2011. *Gupta v. Arrow Financial Services, LLC, Gurstel, Staloch & Chargo, P.A.,* Civ. No. 0:09-cv-03313-SRN-SER, Doc. No. 57 (D. Minn. March 29, 2012). My increased rate of $600 per hour is fully justified based upon my substantial increase in experience as well as the passage of more than a decade.

56. That attached hereto as **Exhibit 4** are true and correct copies of sworn declarations of the following local Minneapolis federal consumer rights attorneys, familiar with my practice and expertise, offered in support of my hourly rate of $600:
    - Vildan A. Teske, Esq.
    - Carl E. Christensen, Esq.
    - Mark L. Heaney, Esq.
    - Thomas J. Lyons, Jr., Esq.
    - Todd Murray, Esq.
    - Mark L. Vavreck, Esq.

## CONCLUSION

57. That I now come before this Court with my nearly 27 years of experience in handling federal FDCPA consumer litigation, and in light of my national experience, competence, knowledge, and the prevailing market rate for legal services in Minneapolis, and ask this Court to find my rate of $600 as reasonable for calculating the lodestar in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Dated: May 26, 2023

**THE BARRY LAW OFFICE, LTD**

By: s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
333 Washington Ave No, Suite 300-9038
Minneapolis, MN 55401-1353
Telephone: (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*